UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mark Bodrog<br>130 Canterbury Road<br>Mt. Laurel, NJ 08054<br><br>    Plaintiff,<br><br>    v.<br><br>New Jersey State Police<br>25 Market Street, P.O. Box 112<br>Trenton, NJ 08625<br><br>And<br><br>The Institute for Forensic Psychology<br>5 Fir Court, # 2<br>Oakland, NJ 07436<br><br>And<br><br>John Does Nos. 1-10<br><br>    Defendants | JURY DEMANDED<br><br>No. |

## CIVIL ACTION COMPLAINT

**I. Parties and Reasons for Jurisdiction.**

1. Plaintiff, Mark Bodrog (hereinafter "Plaintiff") is an adult individual residing at the above address.

2. Defendant, New Jersey State Police ("NJSP") is a governmental entity organized and operating under color of state law and existing at all times material hereto is operating and organized pursuant to the law of the State of New Jersey.

3. Defendant, The Institute for Forensic Psychology is a business corporation duly organized and existing under the laws of the State of New Jersey.

4. At all times material hereto, Defendants qualify as Plaintiff's "employer" under the Americans with Disabilities Act and the New Jersey Law Against Discrimination.

5. Plaintiff has exhausted his administrative remedies pursuant to the Equal Employment Opportunity Act. (See Exhibit A, a true and correct copy of a "right-to-sue" letter issued by the Equal Employment Opportunity Commission.)

6. This action is instituted pursuant to the Americans with Disabilities Act of 1990, and the New Jersey Law Against Discrimination as well as applicable federal law and state common law.

7. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

8. Supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. § 1367.

9. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Plaintiff was applying to work within the State of New Jersey at the time of the illegal actions by Defendants as set forth herein.

**II. Operative Facts.**

10. In or around February 2014, Mr. Bodrog initially applied for entrance to the New Jersey State Police Academy ("NJSP").

11. In April, Mr. Bodrog passed the Defendant's NJSP online initial entrance application.

12. In June 2014, Bodrog scored 6,6,6,5 on all tests during the Physical Qualification Test in Sea Girt, New Jersey and placed amongst the top ten candidates in the physical testing.

13. Mr. Bodrog then sat for the NJSP written examination and in August, 2014, he was informed that he passed the written examination.

14. On December 8, 2014, Mr. Bodrog was interviewed at the Defendant's NJSP Barracks in Belmar, New Jersey by Troopers Bobo, Ioia and Wren who informed Bodrog that he was in their view, their top candidate and first choice to become an NJSP trooper.

15. During that December 8, 2014, interview, Mr. Bodrog provided a complete medical history and authorization for the Defendants to obtain any medical records or other documentation relating to his background.

16. Mr. Bodrog submitted to any and all background checks required of him and then on May 7, 2015, Mr. Bodrog received an offer of employment by the Defendant, NJSP.

17. On May 27, 2015, Bodrog received an email from Defendant, NJSP, notifying him to report to West Trenton, New Jersey for a full medical evaluation.

18. During this medical evaluation, another request for his medical documentation was made, to which Mr. Bodrog fully responded.

19. Mr. Bodrog passed the medical examination and provided all documentation on May 30, 2015.

20. In June, 2015, Mr. Bodrog submitted to a psychological test arranged by the NJSP through a person named, Guillermo Gallegos, from Defendant, Institute of Forensic Psychology.

21. Mr. Gallegos was more than fifteen minutes late for a one half hour interview and was immediately hostile towards Mr. Bodrog, questioning his desire to be an NJSP Trooper and also challenging Bodrog as to his military service and combat experience as a United States Marine in Afghanistan.

22. Mr. Gallegos also questioned Bodrog about a Post-Traumatic Stress Disorder ("PTSD") diagnosis from the Veteran's Administration Hospital in Philadelphia.

23. Mr. Gallegos's manner during the psychological test (while rude and disrespectful) was purposeful and by design; the theory being, Gallegos displays hostility and contempt for Mr. Bodrog to observe Bodrog's reaction to evaluate his tolerance for disrespectful and rude conduct that Mr. Bodrog is certain to encounter in the event he becomes a Trooper.

24. At all times, Mr. Bodrog was calm, answered Mr. Gallegos's questions and left believing he passed.

25. On June 23, 2015, Mr. Bodrog received a phone call from Lt. Schaefer, an officer in the NJSP selection process informing Bodrog that he could no longer continue in the process and was being rejected from the Academy.

26. Mr. Bodrog was advised that he was welcome to re-apply, and not given a reason for his discontinuance from the NJSP Academy process.

27. Further, Defendants refused to produce any medical record or employment file to Mr. Bodrog despite repeated requests from Bodrog directly and his prior counsel.

28. Mr. Bodrog was a decorated officer and company commander in the United States Marine Corps.

29. Mr. Bodrog served two Tours of Duty in Helmand Province, Afghanistan during Operation Enduring Freedom, commanding a platoon of marines in combat.

30. Mr. Bodrog possesses a Master's Degree in Criminal Justice from Rutgers University-Camden and was the top of his class in all physical fitness and intellectual evaluations administered by Defendant, NJSP.

31. Mr. Bodrog is a native of Mt. Laurel, Jersey and a graduate of Lenape High School.

32. The psychological interview with Mr. Gallegos resulted in the cancellation of Mark's candidacy.

33. During the interview, Mr. Gallegos demonstrated interest in Mr. Bodrog's PTSD diagnosis.

34. After his service to his country in Afghanistan was completed, Mr. Bodrog was diagnosed with PTSD as a result of his experiences and observations in Afghanistan.

35. The United States Veteran's Administration physicians and psychiatrists determined that Mr. Bodrog's diagnoses is so benign as not to require medication, therapy or other treatment.

36. As such, Defendants discriminated against Mr. Bodrog based on his status as a United States combat veteran and his disability status.

37. Defendants failed to actually consider whether Mr. Bodrog could actually perform the essential job functions, but instead, refused to hire him solely on the basis of his PTSD diagnosis.

38. At no time did Defendants provide Mr. Bodrog with any rational basis for his exclusion from consideration for hiring.

39. Defendants' failure to hire Mr. Bodrog was motivated solely as a result of his medical condition.

40. Defendants' motivation not to hire Mr. Bodrog was based on his medical condition and had nothing to do with his work performance or ability to perform the work of a New Jersey State Police Officer.

41. Defendants never engaged Mr. Bodrog in a dialogue towards the development of a reasonable accommodation prior to their decision not to hire Mr. Bodrog.

42. Defendants also refused to hire Mr. Bodrog as a result of his military service and the PTSD he contracted in the battlefield.

43. Mr. Bodrog's medical condition is a qualified and protected disability under the Americans with Disabilities Act and the New Jersey Law Against Discrimination.

44. At all times material, Defendants were hostile to Plaintiff's disability and refused to hire him because of his disability.

45. As a direct and proximate result of Defendants' conduct in refusing to hire Plaintiff, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

### III. Causes of Action.

**COUNT I – TITLE I CLAIM--AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C.A. § 12101 et seq)**
**(Plaintiff, Mark Bodrog v. Defendant, NJSP)**

46. Plaintiff incorporates paragraphs 1-45 as if fully set forth at length herein.

47. At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., an employer may not discriminate against an employee based on a disability.

48. Plaintiff is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,.

49. Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,.

50. At all times material hereto, Plaintiff had a qualified disability, as described above.

51. Defendant's conduct in terminating Plaintiff is an adverse action, was taken as a result of his disability and constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,.

52. At no time did the Defendant engage Plaintiff in a meaningful dialogue about a reasonable accommodation given his medical condition.

53. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

54. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

55. Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq Plaintiff demands attorneys fees and court costs.

### COUNT II – NEW JERSEY LAW AGAINST DISCRIMINATION
### (N.J.S.A. 10:5-1, et seq.)
### (Plaintiff, Mark Bodrog v. Defendant, NJSP)

56. Plaintiff incorporates paragraphs 1-55 as if fully set forth at length herein.

57. At all times material hereto, and pursuant to the New Jersey Law Against Discrimination, N.J.S.A 10:5-12, an employer may not discriminate against an employee based on disability or complications arising therefrom.

58. Plaintiff is a qualified employee and person within the definition of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

59. Defendant is an "employer" and thereby subject to the strictures of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12

60. Defendant's conduct in refusing to hire Plaintiff is an adverse action, was taken as a result of his disability and complications thereof and constitutes a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

61. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

62. As a direct and reasonable result of Defendant's negligence, Plaintiff has or may hereafter incur other financial expenses or losses, and will continue to endure same for an indefinite time in the future to her great detriment and loss.

63. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

64. Pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, et seq, Plaintiff demands attorneys fees and court costs.

**COUNT III —UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT—USERRA**
**(38 U.S.C.A. § 4311)**
**(Plaintiff, Mark Bodrog v. Defendant, NJSP)**

55. Plaintiff incorporates paragraphs 1-54 as if fully set forth at length herein.

56. At all times material hereto, Plaintiff Mark Bodrog as an honorably discharged United States Marine Corps platoon commander and veteran of the War in Afghanistan was protected under USERRA, 38 U.S.C. § 4311.

57. Defendant refused to hire Plaintiff as a result of his former membership in the United States Marine Corps.

58. Defendant failed to inform the Plaintiff of his rights and responsibilities under USERRA, 38 U.S.C. § 4311.

59. At all times material hereto, Defendants knew of Mr. Bodrog's disability incurred during his military service.

60. In spite of that knowledge, Defendants failed to take reasonable efforts to accommodate Mr. Bodrog's disability and return the veteran to the position in which he or she would have been employed if the veteran had not performed military service.

61. At all times material hereto, Defendants failed to make reasonable efforts to help qualify the veteran for a job of equivalent seniority, status, and pay, the duties of which he or she is qualified to perform or could become qualified to perform.

59. Defendants' conduct towards Plaintiff, as described above, and incorporated herein, is in violation of USERRA, 38 U.S.C. § 4311.

60. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff

also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

61. As a result of the willful conduct of Defendants, Plaintiff hereby demands punitive damages.

62. Plaintiff demands attorney's fees and court costs.

### COUNT IV--PROMISSORY ESTOPPEL
### (New Jersey State Law)
### (Plaintiff, Mark Bodrog v. Defendant, NJSP)

63. Plaintiff incorporates paragraphs 1-62 as if fully set forth at length herein.

64. As described above, Defendant led Plaintiff to believe that he was hired for the position of New Jersey State Police Officer.

65. As set forth above, Plaintiff participated in the hiring process for over one (1) year based upon the Defendant's representations.

66. As described above, Plaintiff reasonably relied on Defendant's representations and stopped applying for and interviewing for other gainful employment.

67. As a direct and proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, forced relocation costs, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

68. As a result of the willful conduct of Defendant's owners/management/employees, Plaintiff hereby demands punitive damages.

## COUNT V—TORTIOUS INTERFERENCE
### (New Jersey State Law)
### (Plaintiff, Mark Bodrog v. Defendant, The Institute for Forensic Psychology)

69. Plaintiff incorporates paragraphs 1-68 as if fully set forth at length herein.

70. At all times, Defendant, The Institute for Forensic Psychology ("IFP") was acting by and through its employees.

71. As described above, Plaintiff had a reasonable expectation of an employment right with Defendant, NJSP.

72. Defendant, IFP intentionally and/or recklessly interfered with Plaintiff's employment with Defendant, NJSP.

73. As described above, IFP acted maliciously towards Mr. Bodrog.

74. As described above, Defendant, NJSP relied upon the statements and purported findings of IFP in making its decision not to hire Mr. Bodrog.

75. As a direct and proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, forced relocation costs, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

76. As a result of the willful conduct of Defendant's owners/management/employees, Plaintiff hereby demands punitive damages.

**IV. Relief Requested.**

**WHEREFORE,** Plaintiff Mark Bodrog demands judgment in his favor and against Defendants, New Jersey State Police and Institute for Forensic Psychology jointly and severally, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

                                            **LAW OFFICES OF ERIC A. SHORE, P.C.**

                                            BY:  s/ Graham F. Baird
                                            **GRAHAM F. BAIRD, ESQUIRE**
                                            Two Penn Center
                                            1500 JFK Boulevard, Suite 1240
                                            Philadelphia, PA 19102

                                            Attorney for Plaintiff, Mark Bodrog

Date: June 1, 2017